UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CERTAIN INTERESTED UNDERWRITERS AT LLOYD'S, LONDON, <br><br>Plaintiff,<br><br>v.<br><br>BEAR LLC,<br><br>Defendant. | Case No.:  15cv630 BTM (BLM)<br><br>**ORDER DENYING THIRD-PARTY DEFENDANT'S MOTION TO DISMISS** |

In April 2015 Plaintiff Certain Interested Underwriters at Lloyd's, London ("Underwriters") filed an Amended Complaint against Defendant Bear LLC ("Bear"). In September 2015 Bear filed an Amended Counterclaim against Underwriters and an Amended Third-Party Complaint ("ATC") against Third-Party Defendant Marsh USA, Inc. ("Marsh"). Currently before the Court is Marsh's motion to dismiss Bear's ATC, filed on October 9, 2015. For the reason's discussed below, Marsh's motion to dismiss is **DENIED**.

//

//

//

## I. Background

Bear, a Delaware limited liability company with its principal place of business in Minnesota, owns the 102-foot-long yacht M/V Polar Bear ("Polar Bear"). (ATC ¶ 1.) Marsh, a Delaware corporation with its principle place of business in New York, is an insurance broker that helped Bear secure a marine insurance policy for the Polar Bear with Underwriters. (ATC ¶¶ 4, 15.)

At issue in this case is the insurance policy Marsh brokered with Underwriters. Bear specifically alleges that it orally requested Marsh to secure an insurance policy that fully insured Bear "against physical loss of, or damage to, the [Polar Bear] and its equipment, engines and machinery and everything connected thereto." (ATC ¶ 16.) Bear alleges that its principal, Larry Jodsaas, authorized Marsh to purchase a single layer insurance policy that included hull coverage in the amount of $17,000,000. (ATC ¶ 20.) The initial policy period spanned one year beginning in August 2011. (ATC ¶ 21.) Bear alleges that it entered into an oral contract with Marsh to secure renewal of its insurance policy in August 2012 and again in August 2013. (ATC ¶¶ 24-26.)

Bear alleges that instead of securing a single layer insurance policy, Marsh instead secured a policy that contained two covers for physical loss or damage. (ATC ¶ 30.) While the insured sum totals $17,250,000, the policy breaks the amount into two parts: $12,150,000 for "Hull Insurance" (ATC, Ex. A, p. 23), and an additional $5,100,000 in the "Increase Value and Excess Liabilities Clauses" (ATC, Ex. A, pp. 30-32).

In May 2014 the Polar Bear ran aground at the entrance to the San Diego Harbor, damaging the bottom of the hull. (ATC ¶ 40.) In June 2014 the yacht caught fire while undergoing repairs at a shipyard in San Diego, resulting in a total loss. (ATC ¶ 54.)

After Underwriters initiated the instant action, Bear filed counterclaims against Underwriters and a third-party complaint against Marsh for (1) breach of

oral contract, (2) breach of fiduciary duty, and (3) negligence. Marsh moves to dismiss, arguing, inter alia, that because the sum of the insurance policy covers $17,250,000, Bear was not damaged by any alleged breach.

## II. Applicable Law

Underwriters' declaratory relief claims against Bear trigger admiralty jurisdiction because they pertain to a disputed marine insurance policy. See 28 U.S.C. § 1333; Norfolk S. Ry. Co. v. James N. Kirby, 543 U.S. 14, 26 (2004). Bear's third-party claims against Marsh also fall within the Court's admiralty jurisdiction because they directly relate to the marine insurance policy. See Stanley T. Scott & Co. v. Makah Dev. Corp., 496 F.2d 525, 526 (9th Cir. 1974) (holding that a marine insurance broker's claims against the insured were "integrally related to the marine insurance policy" and therefore fell within admiralty jurisdiction).

In the context of marine insurance policies, state substantive law applies in the absence of an established federal maritime rule, federal statute, or a need for uniformity in admiralty practice. Certain Underwriters at Lloyds, London v. Inlet Fisheries Inc., 518 F.3d 645, 649-50 (9th Cir. 2008). This rule also applies to contracts for the procurement of insurance and disputes arising between an insurance broker and its principal. See Illinois Constructors Corp. v. Morency & Associates, Inc., 802 F. Supp. 185, 187 (N.D. Ill. 1992). The parties have not suggested that an established federal maritime rule or federal statute apply, and the Court has not found one. Therefore, state law applies to Bear's third-party claims.

A federal court sitting in admiralty must apply federal maritime choice of law rules. Aqua-Marine Constructors, Inc. v. Banks, 110 F.3d 663, 670 (9th Cir. 1997). "[M]odern choice of law analysis, whether maritime or not, generally requires the application of the law of the state with the 'most significant

relationship' to the substantive issues in question." Id. at 673 (quoting Albany Ins. Co. v. Anh Thi Kieu, 927 F.2d 882, 891 (5th Cir. 1991)). This analysis requires "identification of the place of negotiation and execution of the contract as a means of determining which states have had sufficient contacts with the parties and the transaction to justify application of their law." Aqua-Marine, 110 F.3d at 674.

According to the ATC, Bear's principal executed a "Confirmation of Binding Instructions" ("Agreement") authorizing Marsh to place insurance on behalf of Bear. (ATC, Ex. B.) Bear is a Delaware limited liability company with its principal place of business in Minnesota, while Marsh is a Delaware corporation with its principal place of business in New York. (ATC ¶¶ 1, 4.) The Agreement was executed by Marsh's Ft. Lauderdale, Florida, office. (ATC, Ex. B.)

Florida has the most significant relationship to the substantive issues in question—namely, the contract and agency relationship between Marsh and Bear. Marsh's representative in the Florida office, Kathleen Harris, allegedly reached out to Bear with the hopes of brokering insurance coverage for the Polar Bear. (ATC ¶ 15.) Marsh's Florida office also processed the Agreement which authorized Marsh to place insurance on behalf of Bear. (ATC, Ex. B.) Therefore, Florida appears to have the most significant relationship to the contract and agency issues alleged in Bear's ATC, requiring the application of Florida law to the substantive issues in Bear's third-party complaint.

### III. Discussion

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988). When reviewing a motion to dismiss, the allegations of material fact in plaintiff's complaint are taken as true and

construed in the light most favorable to the plaintiff. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).

Although detailed factual allegations are not required, factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007). "A plaintiff's obligation to prove the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] that the pleader is entitled to relief." Ashcroft v. Iqbal, 565 U.S. 662, 679 (2009) (internal quotation marks omitted). Only a complaint that states a plausible claim for relief will survive a motion to dismiss. Id.

## A.  Claim Four: Breach of Contract

A breach of contract claim requires three elements: (1) a valid contract; (2) a material breach; and (3) damages. Friedman v. N.Y. Life Ins. Co., 985 So. 2d 56, 58 (Fla. Dist. Ct. App. 2008). Marsh argues that because the policy it secured with Underwriters allegedly provides $17,250,000 in coverage, Bear cannot prove damages.

Bear alleges facts sufficient to state a plausible claim that Marsh breached the oral contract. Bear alleges that it entered into an oral contract with Marsh whereby Marsh agreed to secure a renewal of the marine insurance policy fully insuring Bear against losses or damages to the Polar Bear at an agreed value of $17,000,000. Bear alleges that Marsh breached this contract because the actual insurance policy provided two separate forms of cover at an agreed value of $12,150,000. Further, Bear alleges that it was damaged because it "may have to incur fees and costs to prove the amount of its losses on the 'sum insured' excess value cover, even though it would not otherwise be required to do so." (Opp'n to Mot. to Dismiss, ECF No. 42, at 5.)

1  Marsh requests that the Court interpret the insurance policy to include
2  coverage for the total loss of the Polar Bear at an agreed value of $17,250,000.
3  However, Underwriters is not a party to this motion, nor has it stipulated to the
4  insurance policy's scope. Such a request is more appropriate for disposition on a
5  motion for summary judgment.

### B.    Claim Five: Breach of Fiduciary Duty

Under Florida law, an insurance broker has a fiduciary relationship with the insured. See Southtrust Bank v. Export Ins. Srvs., Inc., 190 F. Supp. 2d 1304, 1308 (M.D. Fla. 2002) (citing Moss v. Appel, 728 So. 2d 199, 201-02 (Fla. Dist. Ct. App. 1998)). In general, the broker must not mislead the insured as to the scope of the coverage. Southtrust, 190 F. Supp. 2d at 1309 (finding that plaintiff had stated a valid claim for breach of fiduciary duty with allegation that insurance broker misinformed insured as to effective dates of coverage).

Bear alleges in the ATC that Marsh breached its fiduciary duty by, inter alia, failing to obtain the requested scope of insurance coverage, instead obtaining coverage for the Polar Bear under two covers. Furthermore, Bear alleges that Marsh never informed Bear that its coverage was under two covers, not a single layer. Because Bear alleges that Marsh breached its fiduciary duty by failing to obtain a single layer insurance policy at the agreed value of $17,000,000, Bear states a plausible claim.

### C.    Claim Six: Negligence Claim

An insurance broker has a duty to use reasonable skill and diligence when dealing with the insured. Southtrust Bank, 190 F. Supp. 2d at 1310. "An insurance broker may be liable for damages when there is an agreement to procure insurance and a negligent failure to do so." Bennet v. Bark, 400 So. 2d 484, 485 (Fla. Dist. Ct. App. 1981). "[L]iability may result from a negligent failure to obtain coverage which is specifically requested or clearly warranted by the insured's express needs." Warehouse Foods, Inc. v. Co. Risk Magm't Srvs., Inc.,

530 So. 2d 422, 424 (Fla. Dist. Ct. App. 1988).

As noted above, Bear alleges that it specifically requested a single layer insurance policy for the Polar Bear at an agreed value of $17,000,000. Marsh allegedly procured an insurance policy with two covers at an agreed value of $12,150,000. Therefore, Bear states a plausible claim that Marsh breached its duty to use reasonable skill and diligence in procuring insurance coverage for the Polar Bear.

### IV. Conclusion

For the reasons discussed above, Marsh's motion to dismiss is **DENIED.** Marsh shall have twenty (20) days from the filing of this order to answer Bear's Amended Third-Party Complaint.

**IT IS SO ORDERED.**

Dated: April 29, 2016

*Barry Ted Moskowitz*
Barry Ted Moskowitz, Chief Judge
United States District Court