# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CERTAIN INTERESTED UNDERWRITERS AT LLOYD'S LONDON,<br><br>Plaintiff,<br><br>v.<br><br>BEAR LLC AND DOES 1 through 50,<br><br>Defendants. | Case No.:  15cv630-BTM(BLM)<br><br>**ORDER REQUIRING IN CAMERA REVIEW OF WORD DOCUMENT AT ISSUE AND TRANSMITTAL EMAIL**<br><br>**ECF NO. 57** |

Currently before the Court is Third-Party Defendant Marsh USA Inc.'s May 5, 2016, motion to compel [ECF No. 57-1 ("MTC")], and Defendant, Counterclaimant, and Third-Party Plaintiff Bear LLC's May 12, 2016 opposition to the motion [ECF No. 58 ("Oppo.")].

# **FACTUAL BACKGROUND**

The instant matter was initiated on March 20, 2015 when Plaintiff filed a complaint for declaratory relief.  <u>See</u> ECF No. 1.  Plaintiff, who issued a marine insurance policy to Defendant and Third-Party Plaintiff Bear, seeks a judicial declaration stating that due to Bear's failure to

1

comply with the conditions precedent in the policy, there is no coverage under the insurance policy for the claims asserted by Bear, LLC ("Bear") relating to the fire and damage suffered by the POLAR BEAR.  See ECF No. 1. at 9; see also ECF No. 5 ("FAC") at 6.  The POLAR BEAR is a 260-gross ton, 102-foot long, steel-hulled Citadel/Aleutian Expedition motor yacht.  See ECF No. 63 (Bear's Second Amended Counterclaim and Third-Party Complaint) at 2.  Bear purchased the insurance policy at issue with the assistance of insurance broker and Third-Party Defendant Marsh USA, Inc. ("Marsh").  Id. at 4.  Bear has filed a counterclaim for declaratory relief, breach of the implied covenant of good faith and fair dealing and a third-party complaint for breach of contract, breach of fiduciary duty, and negligence.  See ECF No. 63.

The instant matter is related to another case in this district, Bear, LLC v. Marine Group Boat Works, LLC et al., 14cv2960-BTM (BLM).  In the related matter, Bear is suing Marine Group Boat Works, LLC ("MGBW") for breach of contract, negligence, gross negligence, breach of implied warranty of workmanlike performance, breach of bailment, and fraud.  See Docket in 14cv2960 at ECF No. 1.  The case arose when the POLAR BEAR ran aground in the San Diego harbor causing significant damage and had to be towed out of the water by MGBW.  Id. at 2-3.  MGBW then retained Cross-Defendant Universal Steel Fabrication. Inc. to repair the POLAR BEAR which later caught fire during repairs and was declared a total loss.  Id. at 7.

**RELEVANT DISCOVERY BACKGROUND**

Bear witness, Captain Roger Trafton, a close friend of the owner of Bear, was deposed in this matter and the related matter on December 1-2, 2015 and January 27, 2016.  Mot. at 3. On March 11, 2016, counsel for Bear provided opposing counsel with an errata sheet signed by

1  Captain Trafton. Id. a 4. The errata sheet made substantive changes to Mr. Trafton's testimony
2  that relate to potentially important issues in the case. Id. at 4-6. Due to the changes in the
3  errata sheet, Marsh re-deposed Captain Trafton on March 29, 2016. Id. at 6. Captain Trafton
4  testified that he spent thirteen to fourteen hours taking notes on scratch paper as he reviewed
5  his January 27, 2016 deposition transcript for accuracy. Id.  When he was finished reviewing,
6  he typed the notes from the scratch paper into a Word Document that he emailed to Bear's
7  counsel, Mr. Robert Wright on March 9, 2016 and shredded the scratch paper. Id.; see also ECF
8  No. 57-2, Declaration of Jocelyn M. Sher In Support of Marsh's Motion to Compel ("Sher Decl.")
9  at Exh. E. On March 11, 2016, Mr. Wright sent Captain Trafton a typed errata sheet that Captain
10 Trafton signed and was provided to counsel for Marsh. Mot. at 7. During the March 29, 2016
11 deposition, Counsel for Marsh asked Captain Trafton if the errata sheet he had been given was
12 identical in substance to the Word Document that he sent to Mr. Wright on March 9, 2016. Id.
13 Mr. Wright objected to the question, asserted the attorney-client privilege, and instructed
14 Captain Trafton not to respond. Id.; see also Sher Decl. at Exh. D. Marsh also requested a copy
15 of the Word Document that Captain Trafton emailed to Mr. Wright which Bear refused to
16 produce. Mot. at 7.

17    On April 27, 2016, counsel for the parties jointly contacted the Court regarding this
18 discovery dispute. ECF No. 55. In regard to the dispute, the Court ordered that Marsh file its
19 motion to compel on or before May 5, 2016 and that any oppositions to the motion be filed on
20 or before May 12, 2016. Id. at 1. The parties filed their respective motion and opposition in
21 accordance with that order. See Mot. and Oppo.

## LEGAL STANDARD

The scope of discovery under the Federal Rules of Civil Procedure is defined as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

District courts have broad discretion to determine relevancy for discovery purposes. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002). District courts also have broad discretion to limit discovery to prevent its abuse. See Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

A party may request the production of any document within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Id. at 34(b)(2)(B). The responding party is responsible for all items in "the responding party's possession, custody, or control." Id. at 34(a)(1). Actual possession, custody or control is not required. Rather, "[a] party may be

ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." Soto v. City of Concord, 162 F.R.D. 603, 619 (N.D. Cal. 1995).

## **DISCUSSION**

Marsh seeks an order from the Court compelling Bear to produce the Word Document prepared by Captain Trafton. MTC at 2. In support, Marsh argues that the Word Document is not protected from disclosure under the attorney-client privilege because (1) it was not a confidential communication made for the purpose of securing legal advice or legal services, (2) Captain Trafton could not have had the expectation that changes he made to correct deposition errors would be confidential, and (3) emailing a document to counsel does not automatically make that document privileged and the underlying facts contained in the document do not become privileged even if Captain Trafton later sought legal advice regarding his deposition testimony. Id. at 8-10. Marsh further argues that the Word Document is not protected from disclosure by the attorney work product privilege because it does not reflect "the mental impressions, conclusions, opinions, or legal theories" of Bear's counsel." Id. at 10. Marsh also requests that "any effort by Bear to provide further 'testimony' from Captain Trafton with respect to the matters at issue in this motion [] be rejected" as Bear should have questioned Captain Trafton at the March 29, 2016 deposition so that Marsh had the opportunity to follow-up and explore his responses as opposed to submitting an affidavit in conjunction with this motion that cannot be contested. Id. at 9.

Bear contends that Marsh has failed to carry its burden on the instant motion, "has had ample opportunity to take relevant, non-privileged discovery on this issue and has no real need for the Word document." Oppo. at 5.  Bear also contends that the document at issue is a privileged attorney-client communication as the document was (1) seeking legal advice from counsel, (2) sent to counsel with the understanding that it would remain confidential, (3) only sent to counsel, and (4) only discussed by counsel and Captain Trafton. Id. at 5-10. Bear notes that its counsel asserted the privilege during Captain Trafton's deposition and as such has not waived the privilege. Id. at 6.  Bear further contends that the document does not constitute deposition testimony as Captain Trafton did not intend for the document to be the errata sheet. Id. at 7.

"Issues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law." Clarke v. Am. Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992) (citing United States v. Zolin, 491 U.S. 554, 562 (1989); United States v. Hodge and Zweig, 548 F.2d 1347, 1353 (9th Cir. 1977); Fed. R. Evid. 501). "The attorney-client privilege exists where: '(1) [ ] legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.'" United States v. Richey, 632 F.3d 559, 566 (9th Cir. 2011) (quoting United States v. Graf, 610 F.3d 1148, 1156 (9th Cir. 2010)).  The privilege extends to agencies to the extent the agency is consulting its attorney "as would any private party seeking advice to protect personal interests."

Ctr. for Bio. Diversity v. Office of Mgmt. & Budget, 625 F. Supp. 2d 885, 892 (N.D. Cal. 2009) (quotation omitted); Our Children's Earth Found. v. Nat'l Marine Fisheries Serv., 85 F. Supp. 3d 1074, 1086-87 (N.D. Cal. 2015) (same).  "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed."  United States v. Martin, 278 F.3d 988, 999 (9th Cir. 2002) (quotation omitted).  The privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege," and applies "only when necessary to effectuate its limited purpose of encouraging complete disclosure by the client."  See Fisher v. United States, 425 U.S. 391, 403 (1976); Griffith v. Davis, 161 F.R.D. 687, 694 (C.D. Cal. 1995) (quoting Tornay v. United States, 840 F.2d at 1428).

The party asserting the attorney-client privilege bears the burden to establish that the privilege applies to the requested documents.  Griffith, 161 F.R.D. at 694 (quoting Tornay, 840 F.2d at 1426).  The party fails to meet its burden if it uses boilerplate language and makes "no effort . . . to tailor the explanation to the specific document withheld . . . ."  Our Children's Earth Found., 85 F. Supp. 3d at 1087 (citing Wiener v. FBI, 943 F.2d 972, 978-79 (9th Cir. 1991)).

Captain Trafton declares that the Word Document included notes about items he found confusing or in error in the deposition transcript and "page and line references, potential changes, and, in some instances, comments on the testimony reflecting my thoughts."  ECF No. 58-2, Declaration of Roger Trafton In Opposition to Motion to Compel ("Trafton Decl.") at 2.  He further declares that he created the Word Document "for the primary purpose of transmitting my thoughts to Mr. Wright, so that we could discuss these and other potential changes to the

deposition transcript, the reasons for the changes to the transcript, and I could obtain his assistance in preparing a proper errata sheet, including reasons for the changes." Id.

Here, the Court finds that the Word document is not subject to the attorney-client privilege to the extent that it only reveals underlying facts.[1]  See Williams v. Connick, 2014 WL 6698299, *9 (E.D. La. Nov. 26, 2014) (noting that "the handwritten errata sheets will reveal no more than underlying facts, and underlying facts are not sheltered by any privilege."). As such, Captain Trafton's notes regarding errors and "page and line references" probably are not privileged. On the other hand, to the extent that the document contains Captain Trafton's efforts to obtain legal advice from Mr. Wright, the document, or portions of it, may be privileged. The first factor in the eight factor test that is used to assist in determining whether or not something is covered by the attorney-client privilege focuses on whether or not legal advice of any kind is being sought. See Richey, 632 F.3d at 566 (quoting Graf, 610 F.3d at 1156). Because it is unclear to the Court from the description of the document whether the entire document, portions of it, or none of it is/are privileged, the Court finds it necessary to review the challenged Word document. In addition, because the email that Captain Trafton sent to Mr. Wright transmitting the challenged Word document may impact the Court's determination as to whether Captain Trafton was seeking legal advice, the Court also finds it necessary to review that document. Accordingly, Bear's counsel, Mr. Wright, is **ORDERED** to lodge a copy of the Word Document

---

[1] Marsh also asserts that the Word Document is also not protected under the attorney work product doctrine. Mot. at 10-11. Since Defendant does not appear to be asserting the attorney work product privilege [see Oppo.], the Court declines to consider the applicability of the privilege.

and Captain Trafton's transmittal email with the Chambers of Judge Major for *in camera review* on or before **June 7, 2016**. The documents may be hand delivered or emailed to efile_major@casd.uscourts.gov. The Court will then review the documents and issue an order resolving this dispute.

**IT IS SO ORDERED**.

Dated:  6/2/2016

Hon. Barbara L. Major
United States Magistrate Judge