# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CERTAIN INTERESTED UNDERWRITERS AT LLOYD'S, LONDON,<br><br>Plaintiff,<br><br>v.<br><br>BEAR, LLC, et al.,<br><br>Defendant. | Case No.: 15-cv-630-BTM-BLM<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO AMEND JUDGMENT [ECF No. 250]** |
| AND RELATED COUNTER- AND THIRD-PARTY ACTIONS | |

Pending before the Court is Defendant Bear, LLC's motion to amend judgment under Federal Rules of Civil Procedure 59(e) and 60(b) (Pl.'s Mot. to Amend J., ECF No. 250). For the reasons set forth below, the motion is denied.

## **I. BACKGROUND**

The Court and parties are familiar with the underlying facts of this case. Therefore, the Court will only recite the facts relevant to this motion.

On April 21, 2017, the Court granted Plaintiff Certain Interested Underwriters at Lloyd's, London's ("Underwriters") motion for summary judgment, holding that

the Maintenance and Repair Clause ("Repair Clause") is an unambiguous warranty which Bear breached by failing to notify Plaintiff that the *Polar Bear* had struck the jetty, failing to obtain consent for the subsequent hot work performed, and failing to provide Underwriters with requisite documents.  (ECF No. 130.) On April 24, 2017, the Clerk entered judgment for Underwriters on their claim for declaratory relief and on Bear's counterclaims for declaratory relief, breach of contract, and breach of implied covenant of good faith and fair dealing.  (ECF No. 131.)

On November 6–17, and 28–29, 2017, the Court held a bench trial on Bear's claims against Third-Party Defendant Marsh USA, Inc. ("Marsh").  On November 8, 2017, Marsh broker Kathleen Johnson testified to the following on direct:

By Mr. Wright:

> Q: All right.  Well, let me ask it this way.  Have you encountered any situations with a Chubb policy where a yacht has gone into a yard for covered repairs?
> 
> A: From a covered loss or —
> 
> Q: Yes, from a covered loss.
> 
> A: No. Because a covered loss is a different situation for going into a yard period.
> 
> Q: So in other words, if it goes in for a covered loss, even if hot work is required, Chubb doesn't have additional premiums, correct?
> 
> A: None of the carriers do.
> 
> Q: You're saying that's true even of Lloyd's?
> 
> A: Correct, for a covered loss.
> 
> Q: In other words, if you go in for a covered loss under Lloyd's, you can— you can have the hot work done without Lloyd's consent?
> 
> A: Because they're already on notice for a covered loss, correct.
> 
> Q: That's the way you interpret the way this works, correct?
> 
> A: That's the way that it happens when a loss happens.

(Bench Trial Tr. Vol. 5, ECF No. 207, 388:20–389:15.)

The Court: Ms. Johnson, I want to make sure I understood what you said. Are you saying that all the underwriters, including Lloyd's, that you represent do not charge an extra premium for hot work that is done for a covered loss?

A: Yes, that is what I'm saying.

The Court: All right.

(Id. at 390:12–18.)

Counsel for Bear, Mr. Robert Wright, continued with his questioning:

Q: Now, is it your testimony then that if there is a covered repair under the Lloyd's policy, that Lloyd's cannot object if hot work is required to fix it?

A: Correct.

Q: Okay. And is it your testimony that no permission is required then from Lloyd's to repair a covered loss that requires hot work?

A: There's no permission needed from Lloyd's underwriters. The Lloyd's adjustors who handle the claims already know about the loss, so they know what work's going to be handled in the yard to repair the damage. And if it includes hot work, Lloyd's claims is aware of that. Underwriters do not need to agree or approve.

Q: So is it your understanding that what is required under the Lloyd's policy is that they must have notice that hot work will be done in the yard?

A: I'm confused by your question.

Q: Well, let me ask you this. If a yacht comes in for covered hot work repairs, is it your understanding that notice is required to be given to Lloyd's?

A: When you say "covered hot work repairs" is that for a covered loss?

Q: Yes, for a covered loss.

A: Lloyd's has to be on notice for the loss.

Q: But what you're saying is, once they're put on notice, they don't have any further say in terms of whether it's—the boat is covered while the repair is being done, correct?

1     A: Underwriters do not, no.
2 (Id. at 393:1–394:3.)
3     Q: Are you aware of the facts generally around the fire loss?
4     A: Yes.
5     Q: Given your experience, have you reached a view as to whether, had you
6     been contacted, the loss would have been covered?
7     A: Yes.
8     Q: What is your view?
9     A: If we had been notified of the jetty loss, there would have been coverage
10    under the Lloyd's hull policy.
11 (Bench Trial Tr. Vol. 6, ECF No. 204, 479:14–21.).

On April 20, 2018, after weighing all of the evidence presented at trial, the Court found in favor of Marsh and against Bear on its claims for negligence and breach of fiduciary duty. (ECF No. 244.) On April 23, 2018, the Clerk entered judgment for Marsh and against Bear, disposing of all claims and parties in the action. (ECF No. 245.)

Bear now brings this motion before the Court to amend its judgment with respect to Underwriters in light of Ms. Johnson's trial testimony.

## II. STANDARD

**A. Rule 59(e)**

"Under Rule 59(e), it is appropriate to alter or amend a judgment if '(1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009) (quoting *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001)). The Rules provide that a party seeking to amend or alter a judgment must file the motion "no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).

To prevail on a theory of newly discovered evidence, the moving party must show that "the evidence was discovered after the judgment, that the evidence could not have been discovered earlier through due diligence, and that the newly discovered evidence is of such magnitude that had the court known of it earlier, the outcome would likely have been different." *Dixon v. Wallowa Cnty.*, 336 F.3d 1013, 1022 (9th Cir. 2003).

**B. Rule 60(b)**

Under Rule 60(b), a district court may provide relief from a final judgment if the moving party can show:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

"A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).

## II. DISCUSSION

**A. Timeless of Motion**

The parties dispute whether Bear's motion is timely under the Rules. Underwriters argues that Bear's motion is untimely because the Court issued the judgment as to its claims on April 23, 2017, more than a year before Bear filed the instant motion. Bear, on the other hand, contends that the judgment in favor of Underwriters did not become final until April 23, 2018 when the Court issued the judgment in favor of Marsh as to the remaining claims in the case.

Rule 59(e) and 60(b) apply only to final judgments and appealable

interlocutory orders. *See Balla v. Idaho State Bd. Of Corr.*, 869 F.2d 461, 466–67 (9th Cir. 1989); Fed. R. Civ. P. 60(b)(1). Because neither party moved for certification of the Underwriters judgment under Rule 54(b) and the Court did not sua sponte certify it as final, the judgment remained interlocutory and unappealable until the Court issued its final judgment on April 23, 2018. *See Frank Briscoe Co. v. Morrison-Knudsen Co.*, 776 F.2d 1414, 1416 (9th Cir. 1985) (holding that it did not have jurisdiction over an appeal where the district court did not expressly certify under Rule 54(b) that there was no reason for delay). Thus, Bear's motion is timely as it was filed on May 19, 2018—within 28 days from the entry of the final judgment on April 23, 2018.

Having found that Bear filed a timely motion, the Court must determine which Rule governs Bear's motion. Bear cites to both Rule 59(e) and 60(b) in its motion. However, the Ninth Circuit treats the motion differently depending on when it was filed. A motion for reconsideration is treated as a Rule 59(e) motion if it is timely filed within the specified 28-day period. *See Am. Ironworkers & Erectors Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 899 (9th Cir. 2001). If filed after, the motion is treated as a Rule 60(b) motion for relief. *See id.* Because Bear filed its motion for reconsideration within the 28-day period, the Court will treat this as a Rule 59(e) motion.

## B. NEWLY DISCOVERED EVIDENCE

The newly discovered evidence offered by Bear consists of Ms. Johnson's testimony during the Marsh bench trial regarding the Repair Clause's application to loss situations. The parties do not appear to dispute Bear's assertion that Ms. Johnson's testimony was discovered after the Court's order granting Underwriters summary judgment. They do, however, disagree on whether Bear has satisfied the remaining requisites for obtaining relief under Rule 59(e).

## C. DUE DILIGENCE

The parties dispute whether Bear could have discovered Ms. Johnson's

testimony through due diligence before the Court ruled on Underwriters' motion for summary judgment. The Court finds that Bear cannot show that it was reasonably diligent in discovering the evidence.

It is undisputed that Bear deposed Ms. Johnson on January 7, 2016. (Pl.'s Mot. to Amend J., ECF No. 250–2, ¶ 7.) Bear itself admits that the deposition "lasted all day and consumed 336 pages of deposition testimony." *Id.* Bear extensively questioned Ms. Johnson about waivers of subrogation, coverage for hot work, additional premiums, and specifically the Repair Clause. (Def.s' Opp'n to Pl.s Mot. to Amend J., ECF No. 261, Ex. C.) Bear argues that it was under no obligation to probe as to whether Ms. Johnson was mistaken or had not given complete answers. However, Bear never asked if and how coverage differs under a loss and non-loss situation. "To exercise due diligence an attorney must 'ask the right questions' in a deposition." *Briscoe v. Cnty of St. Louis*, 690 F.3d 1004, 1016 (8th Cir. 2012). Further, Ms. Johnson did not offer conflicting testimony, she simply responded to the questions she was asked. There is no evidence that if Bear had asked her about the difference between a loss and non-loss situation, she would have offered conflicting testimony. Bear cannot now seek reconsideration over testimony that it could have discovered if it had "asked the right questions." *See id.* Therefore, the Court finds that Bear has not demonstrated that the testimony could not have been discovered earlier through due diligence.

**D. MATERIALITY OF EVIDENCE**

Even if Bear satisfied the first two requirements under Rule 59(e), Bear cannot show that Ms. Johnson's testimony would have made a difference at the summary judgment stage.

Rule 59(e) is not intended to provide litigants with a "second bite at the apple." *Weeks v. Bayer*, 246 F.3d 1231, 1236 (9th Cir. 2001). Instead, reconsideration of a final judgment under Rule 59(e) is an "extraordinary remedy, to be used sparingly in the interest of finality and conservation of judicial

resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003).

Bear argues that Ms. Johnson's testimony requires that the Court vacate the judgment in favor of Underwriters. In opposition, Underwriters first argues that Ms. Johnson's testimony would not be admissible because she does not have personal knowledge on its claim handling practices. The Court agrees. Ms. Johnson is a yacht insurance broker, not a claims specialist. (Def.s' Opp'n, Ex. C. 3, 52:14–53:2.) Indeed, Ms. Johnson testified at her deposition that Donna Savage was the claims specialist in this instance and that once a claim was placed, she could not get involved. (Id.) Additionally, she testified that she consulted with other specialists at Marsh in preparation for her testimony. (Id. at 28:8–22.) As the Ninth Circuit has made it clear, "[l]ike affidavits, deposition testimony that is not based on personal knowledge and is hearsay is inadmissible and cannot raise a genuine issue of material fact sufficient to withstand summary judgment." *Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1091 (9th Cir. 1990). Though the Court found Ms. Johnson to be a credible witness, it was within her capacity as a yacht insurance broker, not as a claims specialist. Thus, her testimony would not have been considered on a motion for summary judgment.

Second, Underwriters argues that because the policy is unambiguous, the Court is bound by its plain meaning and cannot consider Ms. Johnson's trial testimony as evidence of industry custom and practices. Bear, on the other hand, argues that the Court must consider evidence of custom and practice when assessing a provision in a marine insurance policy, even when the language of that policy is clear. However, Bear fails to cite to any federal admiralty case establishing that a court sitting in admiralty must consider industry customs and practice evidence when interpreting a marine insurance policy. Instead, Bear cites to cases in which the court, given the circumstances of the case, chose to consider usages of trade when interpreting the policies. The Court finds that those cases are inapplicable here as the language of the Repair Clause does not depend on

8

15-cv-630-BTM-BLM

the interpretation of terms of art.

For example, in *Cuban-Canadian Sugar Co., S.A. v. Arbuckle Bros. and British & Foreign Marine Ins. Co., Ltd.*, 1927 AMC 152 (N.Y. Sup. Ct. Jan 4, 1927), the court found it appropriate to consider parol evidence of the usage of trade and established customs where the policy insuring the shipment of sugar turned on the interpretation of expressions such as "shore to shore," "port to port," and "including risk of craft to and from vessel." *Id.* at 154. Additionally, the cases Bear cites to rely on New York law, not federal admiralty law, when deciding to consider trade and usage evidence to interpret the intent of the parties. *See Antilles S.S. Co. v. Members of Am. Hull Ins.*, 733 F.2d 195, 198 (2d. Cir. 1984); *see also Swift Spindrift Ltd. v. Alvada Ins. Inc.*, 175 F. Supp. 3d 169, 175 (S.D.N.Y. 2016). Here, both parties have agreed that in the absence of a federal statute or judicially fashioned admiralty rule, Delaware law controls.

Under Delaware law, "if the language is clear and unambiguous a Delaware court will not destroy or twist the words under the guise of construing them." *Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 926 (Del. 1982). If the language of an insurance contract is in fact clear and unequivocal, a party will be bound by its plain meaning, because "an insured has a duty to read his insurance policy." *Id.* at 928. The Delaware Supreme Court has made it clear that "extrinsic evidence is not to be used to interpret contract language where that language is plain and clear on its face." *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 289 (Del. 2001) (internal citations omitted). Here, because the Court found that the Repair Clause was unequivocally clear, it would not have relied on Ms. Johnson's testimony.

Furthermore, Ms. Johnson's testimony does not constitute evidence of industry custom or usage in the trade. Custom and usage "must be a rule . . . so certain and uniform as to be, not only valid and enforceable in a court of law, but the parties must be presumed to have known it and acted in reference to it." *Mine*

*Safety Appliances Co. v. AIU Ins. Co.*, 2014 WL 605490, at *4 (Del. Super. Ct. Jan. 21, 2014) (quoting *Albus v. Toomey*, 273 Pa. 303, 306 (1922)). *See also Wilmington City Ry. Co. v. White*, 22 Del. 363, 66 A. 1009, 1012 (1907) (custom and usage means "a course of dealing which derives its legal force from assent, express or implied . . . as something which by long usage or judicial sanction has acquired the force of law, and is binding without regard to the question of assent"). "Evidence of [industry] custom and usage is only relevant and admissible if the words have a special meaning or usage in the . . . industry." *Mine Safety Appliances Co. v. AIU Ins. Co.*, 2015 WL 5829461, at *2 (Del. Super. Ct. Aug. 10, 2015). Bear has not demonstrated that Ms. Johnson's testimony regarding the Repair Clause's application to a loss situation is so well established that it constitutes custom and usage. Additionally, Bear does not seek to use Ms. Johnson's testimony to give a special meaning to a set of words to better understand the parties' intent. Instead, it seeks to use her testimony as evidence of how the Repair Clause should be applied.

Accordingly, the Court finds that Bear has not met its burden in demonstrating that Ms. Johnson's testimony would have made a difference in ruling at the summary judgment stage.

## IV. CONCLUSION

For the reasons discussed above, Bear's motion to amend judgment under Federal Rules of Civil Procedure 59(e) and 60(b) (ECF No. 250) is **DENIED**.

**IT IS SO ORDERED.**

DATED: August 21, 2018

BARRY TED MOSKOWITZ
Chief Judge, United States District Court

10
15-cv-630-BTM-BLM